# SMITH v. KIHLGREN.

---

PATENTS; INTERFERENCE; EVIDENCE; PRESUMPTIONS.

Where the evidence in an interference proceeding involving an invention for decorating or "stroking" candies showed that the junior party, who filed two months after the senior party's filing date, had manufactured and sold a machine three months before the senior party's date of conception, and there was evidence on behalf of the junior party that such machine contained every element of the issue, and was in existence and accessible to the senior party, thus making it possible for the senior party to disprove his adversary's evidence if

he could have done so; and it further appeared that the junior party, after the sale of this machine, manufactured and sold other and similar machines embodying the invention,—it was held that the junior party was entitled to the award of priority. (Citing *Schneider* v. *Driggs*, 36 App. D. C. 116.)

No. 944.   Patent Appeals.   Submitted January 12, 1915.   Decided February 1, 1915.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Reversed.*

The facts are stated in the opinion.

· *Mr. Cornelius C. Billings* and *Mr. William A. Megrath* for the appellant.

*Mr. D. P. Wolhaupter, Messrs. Chapin & Company, Mr. Harry W. Bowen,* and *Mr. Melville Church* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

Appeal by Myron A. Smith from a Patent Office decision in an interference proceeding awarding priority of invention to the senior applicant, Theodor Kihlgren, the appellee here. The invention relates to a machine for decorating or "stroking" candies by making a ridge, either straight, zigzag, S-shaped, curved, or looped, upon the pieces of candy as they are carried beneath a receptacle comprising an element of the stroke.

The counts of the issue are three in number and read as follows:

"1. A machine for stringing pasty material, comprising a receptacle for said material, provided with a suitable outlet opening, means for causing the receptacle to move in a circular path, and a device in the receptacle to effect the agitation of the material at or near said outlet opening.

"2. A stringing machine for pasty material, comprising a receptacle for said material, having a discharge orifice, a device

disposed at or near said orifice to agitate and expel said material, and means to cause the receptacle to move in a path eccentric to its orifice to deposit the material in a looped manner on a moving object.

"3. In a chocolate stringing machine, a receptacle for containing the material and provided with a discharge orifice, means for moving the receptacle whereby the flow of material from the orifice may be directed either in a line eccentric with or eccentric to the axis of the receptacle, and a device disposed at or near said orifice to agitate said material."

As will be readily seen from an examination of these counts, the invention comprises a receptacle containing a pasty material with which the decorating is done, means for giving to the receptacle containing this material a circular or eccentric movement to deposit the material in a corresponding form or line, and means within the receptacle to agitate the material. Count 2, in addition, requires that the last-mentioned means shall both "agitate and expel" the decorative material.

The appellee Kihlgren alleges conception and disclosure as of June 26, 1908, and drawings July 30th of that year. He filed his application on September 23d, following. We shall assume that he conceived and disclosed the invention as alleged. Smith, the appellant, has been engaged in the making of candy machinery since at least 1904, when he made a chocolate-marking device, which, however, did not contain the elements of the counts in issue. In about October, 1907, he built a machine which, when first constructed, contained all the elements of these counts save one. The receptacle containing the pasty material, while capable of a longitudinal and transverse movement, would not accomplish both movements automatically. The cam for the longitudinal movement had been perfected, but the cam for the transverse movement had not been at that time. Mr. Smith, in his direct testimony, was asked when this machine with the "longitudinally and transversely movable stroking device" was completed, and replied that it was "complete in such conditions as we would show it to a customer sometime before the date of February 27, 1908," and that he

had actually used it for stroking candies for "three or four months in order to perfect it before we would bring a customer here to see it in operation. I say thoroughly perfected." He was again asked whether, prior to the end of February, 1908, he operated this first machine for the purpose of stroking candies, and replied: "Many times. In fact, it was necessary to do so in order to develop the same to a *commercial success;*" that on February 27, 1908, he showed this machine to a Mr. Hoops, of Hawley & Hoops, Mulberry street, New York city, and sold him a machine for his firm, which was delivered on March 12th, following, Hawley & Hoops paying $2,500 therefor; that he built a number of similar machines that year, which were sold and went into actual use. In his cross-examination Mr. Smith gave the names and addresses of several of the firms who purchased these machines. Mr. William J. Lacey, a mechanical draftsman testifying for Mr. Smith, stated that while they were experimenting with the first machine there was talk about a cam to operate the zigzag and the curved stroke, and that he told Mr. Smith "it could be done." He was asked whether he made any drawings, and replied that he made some about May, 1908, but that "the device had been worked out" previous to that time, and he had seen it in operation. Mr. William F. Heller, foreman and assistant superintendent of the factory where the Smith machines were built, testified that prior to the sale to Hawley & Hoops he had seen a machine operate so as to make a straight, circular, and zigzag stroke. In cross-examination he was asked how the different strokes were produced, and replied: "Why, for the straight stroke, had a longitudinal cam movement. Then by wanting the circular stroke, the zigzag or S there was a cam for giving a transverse movement." He was then asked how a circular stroke could be produced "by means of the same device," and replied: "With a longitudinal and transverse movement with cams laid out for same;" that these two movements produced zigzag, S-shaped, and circular strokes "according to the shape of the cam," each desired stroke requiring a different shaped cam. Mr. Hoops corroborated appellant as to the purchase of a machine in March,

1908, and further testified that his firm had continued such use during the busy season, down to the time he testified. He was asked in cross-examination when he had last used it, and answered: "We have been running it now for five months steady. We are running it now." It further appeared that there had been no substantial change in the machine.

Smith's application was filed November 20, 1908, a little less than two months after Kihlgren's filing date. Each of the tribunals of the Patent Office has found that the application disclosed every element of the issue, and each has found that the machine which was sold to Hawley & Hoops in March, 1908, which, it will be noted, was more than three months before Kihlgren's date of conception, responded to every element of the issue save one. Each of the tribunals reached the conclusion that Smith's evidence did not show that this early machine contained "means for causing the receptacle to move in a circular path," and therefore awarded priority to Kihlgren. We are unable to accept this finding. While the evidence on this point is not as clear as it might have been, we are satisfied that Smith had completed his invention prior to the sale of the Hoops machine. The principal contention, when the testimony was taken, related to the means for agitating and expelling the pasty material from the receptacle. That being so, less attention was given to the point now urged. There is evidence from credible witnesses that the Hoops machine contained every element of the issue, and, inasmuch as that machine was in existence, and, for aught that appears, easily accessible to the appellee, it is probable that appellant's evidence upon this point would have been met had it been possible to do so. *Schneider* v. *Driggs,* 36 App. D. C. 116. Moreover, it must be remembered that the manufacture and sale of other machines followed the manufacture and sale of this machine, and the evidence tends to show that those machines contained the same means for forming the stroke. This evidence, too, stands uncontradicted.

The decision must be reversed, and priority awarded Smith.

*Reversed.*

A petition for a rehearing was denied March 2, 1915.